# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ADRIENNE D. CARTER, <br>             Appellant, | DOCKET NUMBER <br> CB-7121-14-0018-V-1 |
|        v. | |
| DEPARTMENT OF HOUSING AND <br>     URBAN DEVELOPMENT, <br>             Agency. | DATE: May 11, 2015 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Charles E. Wagner, Esquire, Silver Spring, Maryland, for the appellant.

Evette R. Young, Esquire, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant seeks review of an arbitration decision that sustained her removal for misconduct. For the following reasons, we GRANT the appellant's request for review under 5 U.S.C. § 7121(d). Because we find that the arbitrator failed to employ the proper legal framework when he analyzed the appellant's

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

failure to accommodate disability discrimination claim and he made an error in civil service law in his penalty analysis, we VACATE the arbitration decision in this regard. We FIND, however, that the appellant did not prove her disability discrimination claim based on a failure to accommodate. We FURTHER FIND that removal is a reasonable penalty for the sustained misconduct.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2 The background is undisputed. The appellant was removed based on charges of failure to maintain a regular work schedule and failure to follow instructions. *See* Request for Review (RFR) File, Tab 9 at 17-28 (notice of proposed removal), 72-76 (decision letter). The appellant's union filed a grievance that proceeded to arbitration. *See id.* at 77 (notice to invoke arbitration). After a hearing, the arbitrator found that: (1) the agency met its burden to demonstrate that the appellant engaged in the charges; (2) the issue concerning whether the agency provided a reasonable accommodation for the appellant's disability was not properly before the arbitrator, and in the alternative, the appellant failed to demonstrate that the agency violated her rights regarding the failure or refusal to provide her with a reasonable accommodation; (3) the appellant did not prove her disparate treatment disability discrimination claim; and (4) the removal promoted the efficiency of the service and was "for just and sufficient cause." RFR File, Tab 8 at 4-86.

¶3 In her "Statement of Grounds on Which Review is Requested" and "Grounds Requiring Reversal of Arbitrator's Decision," the appellant identified 16 separate grounds, which we condense and summarize as follows: (1) the removal was in retaliation for equal employment opportunity (EEO) activity; (2) the agency improperly denied her request for a reasonable accommodation; (3) the notice of proposed removal was defective because it did not identify the nature of the second charge, the arbitrator used an improper construction of that charge, and the arbitrator committed harmful error in his construction of that

charge; (4) the arbitrator improperly evaluated the appellant's disability discrimination claim and erroneously ruled that the reasonable accommodation issue was not properly before him; (5) the agency violated the appellant's due process rights because it removed her based on her performance, which was not one of the stated grounds for removal; (6) the arbitrator improperly upheld the removal based on an agency official's declaration that was submitted 1 month after the record was closed; and (7) the agency failed to recognize her medical conditions as a mitigating factor in the penalty analysis. *See* RFR File, Tab 7 at 5-9. The agency, in its response to the request for review, asserted among other things, that: (1) the appellant is precluded from asserting retaliation as an affirmative defense for the first time in her request for review; (2) the arbitrator correctly determined that she was not disabled; (3) the arbitrator correctly concluded that she failed to cooperate and provide sufficient medical documentation to support her request for a reasonable accommodation; (4) the appellant understood and responded to the failure to follow instructions charge; and (5) the appellant was provided notice that her performance was at issue. RFR File, Tab 9.

<u>The Board has jurisdiction over the request for review, but it cannot review the appellant's claim of retaliation for protected activity because this issue was not raised before the arbitrator.</u>

¶4     The Board has jurisdiction over the request for review because the subject matter of the grievance is one over which the Board has jurisdiction (removal), the appellant alleged disability discrimination in connection with the underlying action, and a final decision has been issued by the arbitrator. 5 U.S.C. § 7121(d); *McCurn v. Department of Defense*, 119 M.S.P.R. 226, ¶ 5 (2013).

¶5     If the negotiated grievance procedure (NGP) permits allegations of discrimination,[2] the Board will review only those claims of discrimination that

---

[2] A claim of EEO retaliation is cognizable under 5 U.S.C. § 2302(b)(1)(A). *Rhee v. Department of the Treasury*, 117 M.S.P.R. 640, ¶ 20 (2012).

were raised in the NGP. If the NGP does not permit allegations of discrimination to be raised, the appellant may raise such claims before the Board. *See Brookens v. Department of Labor*, 120 M.S.P.R. 678, ¶ 6 (2014); *see also* 5 C.F.R. § 1201.155(c). The appellant did not provide the relevant portions of the NGP; however, the arbitrator discussed section 22.03 of the NGP, which apparently permitted the appellant to raise a claim of discrimination, and the arbitration decision reflects the arbitrator's consideration of the appellant's disability discrimination claim. *See* RFR File, Tab 8 at 49-60, 81-85. Because the appellant could have, but did not, raise her retaliation claim during the NGP, she is therefore precluded from asserting such a claim for the first time before the Board. *See* 5 C.F.R. § 1201.155(c); *see also Brookens*, 120 M.S.P.R. 678, ¶ 6; *Jones v. Department of Energy*, 120 M.S.P.R. 480, ¶¶ 3-10 (2013), *aff'd*, 589 F. App'x 972 (Fed. Cir. 2014).

Standard of review of an arbitration decision

¶6      Arbitration awards are entitled to a greater degree of deference than initial decisions issued by the Board's administrative judges. *See Benson v. Department of the Navy*, 65 M.S.P.R. 548, 554 (1994) (citing *Bean v. Equal Employment Opportunity Commission*, 55 M.S.P.R. 609, 612 (1992)). The Board will modify or set aside such a decision only where the arbitrator has erred as a matter of law in interpreting civil service law, rules, or regulations. *Id*. An arbitrator's factual determinations are entitled to deference unless the arbitrator erred in his legal analysis, for example, by misallocating the burdens of proof or employing the wrong analytical framework. *Pace v. Department of the Treasury*, 118 M.S.P.R. 542, ¶ 5 (2012). Even if the Board disagrees with an arbitrator's decision, absent legal error, the Board cannot substitute its conclusions for those of the arbitrator. *Id*.; *Benson*, 65 M.S.P.R. at 554.

We defer to the arbitrator's decision to sustain both charges.

¶7      Despite the fact that charge 2 was labeled as "failure to follow instructions," the deciding official during the hearing apparently described the

charge as a charge of "insubordination." *See* RFR File, Tab 8 at 70. The arbitrator rejected the appellant's assertion that the charge and the removal should be reversed because she did not have notice of an insubordination charge. *See id.* at 69. Rather, the arbitrator, among other things: (1) determined that the agency never raised "insubordination" as a basis for the removal; (2) found that the agency's allegation in charge 2 (failure to follow instructions) was consistent with the offense of "disregard of a directive" in the agency's table of penalties (offense 19), instead of failure to follow established leave procedures (offense 1B); (3) relied on a post-hearing sworn declaration from the agency's Human Resources Officer, who denied informing the appellant at her oral response to the proposed removal that charge 2 corresponded to offense 1B; (4) found that the appellant was placed on sufficient notice of the nature of charge 2 and properly formulated a response to that charge; and (5) determined that the agency demonstrated that the appellant engaged in misconduct under offense 19. *See id.* at 69-74. In her request for review, the appellant challenges these findings and the arbitrator's reliance on the post-hearing sworn declaration.

¶8    The appellant has not demonstrated that the arbitrator made an error of civil service law or erred in his legal analysis regarding his construction of this charge. Despite the deciding official's apparent inartful use of the word "insubordination" during the hearing, the documentary evidence reflects the perception—shared by both the agency and the appellant—that the charge was failure to follow instructions and did not contain any element of intent that would be required for an insubordination charge. *Compare Hamilton v. U.S. Postal Service*, 71 M.S.P.R. 547, 556 (1996) (an agency may prove the charge by establishing that proper instructions were given to an employee and that the employee failed to follow them, whether that failure was intentional or not), *with Walker v. Department of the Army*, 102 M.S.P.R. 474, ¶ 8 (2006) (insubordination is a willful and intentional refusal to obey an authorized order of a superior officer that the officer is entitled to have obeyed). Notably, the appellant, in her

response to the notice of proposed removal, cited to the Board's decision in *Hamilton*. *See* RFR File, Tab 9 at 62; *see also* RFR File, Tab 8 at 71-72. The arbitrator also noted that the agency identified the failure to follow instructions standard in its pleading. *See* RFR File, Tab 8 at 71-72. We therefore conclude that the arbitrator properly determined that charge 2 was intended to be a charge of failure to follow instructions, and he identified the proper legal standard for evaluating this charge. Thus, we find that his analysis of this charge is entitled to deference.

¶9    Although unclear, the appellant also may be challenging the arbitrator's finding that the agency properly sustained the charge of failure to maintain a regular work schedule. In her request for review, she asserted that it is "well established" that "generally, approved leave (annual, sick, leave without pay, Family and Medical Leave Act (FMLA) [] leave[,] and [Office of Workers' Compensation Programs (OWCP) leave] could not be used as a basis for disciplinary action." RFR File, Tab 7 at 17. However, the arbitrator explained that, even if he excluded the appellant's FMLA and OWCP leave, the appellant still was absent from work for a "significant and unreasonable amount of the total of 1,800 hours over a [2 ½] year period," which amply supports the charge. RFR File, Tab 8 at 62. The appellant has not identified an error in civil service law or other legal error by the arbitrator in this regard, and we find that his decision to uphold the failure to maintain a regular schedule charge is entitled to deference.

The arbitrator did not follow the proper standard for evaluating the appellant's claim of failure to accommodate disability discrimination, and we do not defer to his analysis and conclusions.

¶10    The arbitrator found that the appellant did not prove that the agency improperly denied her accommodation request for up to 2 days per week of telework. *See* RFR File, Tab 8 at 51-60. In making this determination, the arbitrator considered the following evidence: (1) the appellant failed to provide supporting documentation for her first request for an accommodation; (2) she did

not challenge the agency's disapproval of her second request for an accommodation; (3) she did not identify any specific accommodation for her third request; (4) the agency had provided her with a flexible schedule and air purifier, among other things, as a result of her third accommodation request; and (5) the agency had determined that she could not perform the essential functions of her position if she was working at home. *Id.*

¶11 In her request for review, the appellant argued primarily that the arbitrator did not consider the Americans with Disabilities Act Amendments Act of 2008 (ADAAA) and that the agency should have given her the accommodation of a flexible work schedule. *See, e.g.*, RFR File, Tab 7 at 5-9, 36-38, 41-43.[3] It is true that the arbitrator did not reference the ADAAA or any pertinent statutory or regulatory provisions thereto; nor did he appear to appreciate that the ADAAA liberalized the definition of disability. *See Doe v. Pension Benefit Guaranty Corporation*, 117 M.S.P.R. 579, ¶ 38 (2012); *see also Lytes v. DC Water & Sewer Authority*, 572 F.3d 936, 941 (D.C. Cir. 2009) (stating that Congress, in effecting the ADAAA, "undertook generally to 'reinstat[e] a broad scope of protection'"). Additionally, the arbitrator failed to identify any legal standard in his discussion of the appellant's failure to accommodate claim; instead, he only appears to have included a discussion of an "impairment" and "disability" in his analysis of the appellant's disparate treatment claim. *Compare* RFR File, Tab 8 at 51-60 (failure to accommodate claim), *with id.* at 81-85 (disparate treatment claim). *See Thome v. Department of Homeland Security*, 122 M.S.P.R. 315, ¶ 24 (2015) (explaining that an appellant may prove that she has a disability by showing that she: (1) has a physical or mental impairment that substantially limits one or more major life

---

[3] The appellant contends that the arbitrator improperly determined that the accommodation issue was not before him because she had filed an earlier EEO action. RFR File, Tab 7 at 4-5, 7; *see* RFR File, Tab 8 at 48-51. We need not decide this issue because the arbitrator, as discussed herein, alternatively evaluated the appellant's contention that the agency failed to provide her with a reasonable accommodation. *See* RFR File, Tab 8 at 51-60.

activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment). For these reasons, we find that the arbitrator did not employ the proper framework for evaluating the appellant's failure to accommodate claim, his findings are not entitled to deference, and we will make our own findings on this claim. *See FitzGerald v. Department of Homeland Security*, 107 M.S.P.R. 666, ¶ 18 (2008) (holding that the Board may make its own findings regarding the appellant's claim of retaliation because the arbitrator "did not cite *any* legal standard when he evaluated the evidence" and his analysis did not follow the proper legal framework).

¶12        The record reflects that the appellant had a variety of medical conditions. *See, e.g.*, RFR File, Tab 7 at 114-15, 139-42, 149-52. We assume, for purpose of our analysis, that these conditions constitute impairments under the ADAAA. *See* 29 C.F.R. § 1630.2(h)(1). The agency's doctor noted that the appellant's conditions "will at times impair her capacity for mental concentration," RFR File, Tab 7 at 114, and concentrating is a major life activity under the ADAAA, *see* 42 U.S.C. § 12102(2)(A). Thus, even though the appellant's conditions appear episodic, we further assume that she is disabled. *See, e.g.*, 29 C.F.R. § 1630.2(j)(1)(vii) (stating that an impairment that is episodic is a disability if it would substantially limit a major life activity when active).

¶13        Next, even assuming that the appellant has one or more impairments that substantially limit a major life activity, she must still show that she is "qualified" within the meaning of 29 C.F.R. § 1630.2(m). A "qualified" individual with a disability is one who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds, and who, with or without reasonable accommodation, can perform the essential functions of the position. *See* 29 C.F.R. § 1630.2(m). The appellant has not provided any persuasive evidence that she could perform the essential functions of her position with or without an accommodation, and her supervisor indicated that she could not perform her essential functions remotely. *See* RFR File, Tab 9

at 105 (the supervisor's November 7, 2011 email), 107 (January 4, 2010 denial of the appellant's request to telecommute); *see also id.* at 108-11 (excerpt of the appellant's position description). Additionally, the agency's doctor consulted with the appellant's doctor and then concluded that there was "no apparent medical basis for teleworking" 2 days per week. RFR File, Tab 7 at 114-15. The appellant has presented no persuasive evidence or argument to show that the agency's characterization of her duties was erroneous or that her supervisor improperly concluded that she could not perform her essential functions remotely.[4] Accordingly, we find that she has failed to prove that the agency improperly denied her request to telework as a reasonable accommodation.

¶14 The appellant also asserted that the agency improperly denied her request for a flexible work schedule and that the agency's decision to allow her to report by 9:30 a.m. as a result of her third accommodation request "was no accommodation at all since she could already start at 9:30 [a.m.]" due to her flexitour schedule.[5] RFR File, Tab 7 at 42. We cannot discern if she raised this issue during the NGP. *See* 5 C.F.R. § 1201.155(c). In any event, she has not persuaded us that the agency improperly denied her such an accommodation. The record reflects that: (1) on May 2, 2012, the appellant requested an "[a]ccommodation to address medical condition," RFR File, Tab 7 at 116; (2) progress notes from the agency's Human Resources Specialist indicate that she and the appellant discussed a flexible work schedule on June 5, 2012, RFR

---

[4] The record contains assertions that other agency employees may have been permitted to telework. *See, e.g.*, RFR File, Tab 7 at 209 (the appellant's response to the notice of proposed removal). There is no evidence that these other employees had the same job functions or duties as the appellant. Moreover, the appellant does not challenge the arbitrator's evaluation of her disparate treatment disability discrimination claim, and we need not discuss it further.

[5] A flexitour schedule means that an employee may vary her arrival time within 1 hour before or after her selected starting time. The parties do not dispute that, pursuant to a flexitour schedule, the appellant was expected to arrive at work between 7:30 a.m. and 9:30 a.m.

File, Tab 9 at 120; (3) a subsequent email from the Human Resources Specialist to the appellant stated that she "will have to get back to [the appellant] on the core hours [the appellant] can work," *id*. at 137; and (4) the agency granted the appellant's accommodation request for a flexible schedule, so that the appellant could start as late as 9:30 a.m. and as early as 7:30 a.m., which would allow her to take her prescribed medication as needed and treatment, RFR File, Tab 7 at 116.

¶15     The appellant correctly noted that the agency was required to enter into the interactive process to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations, RFR File, Tab 7 at 42-43 (citing 29 C.F.R. § 1630.2(o)(3)).   However, the appellant also has an obligation to assist in the search for an appropriate accommodation in good faith, *see Collins v. U.S. Postal Service*, 100 M.S.P.R. 332, ¶ 11 (2005).   A reasonable accommodation request does not have to be in writing, *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 15 n.6 (2013), but it appears that the appellant did not clearly communicate with the Human Resources Specialist that she wanted to be able to arrive at work after 9:30 a.m.  The medical evidence that she provided to the agency sheds no light on this issue.  Notably, her doctor's notes state that she should be permitted to come in "late," but do not explain what "late" means.  *See* RFR File, Tab 7 at 140-42. Additionally, the appellant's testimony about the nature of her accommodation request was confusing:

> Q: Did you ask for [a] flexible work schedule?
>
> A: I asked for a flex schedule for a reasonable accommodation.  I already had a flex schedule.
>
> Q: You had a flex tour schedule?
>
> A: Yes, that's what I said, my regular tour.  That was something I already had.  I asked for a reasonable accommodation flex.

*Id.* at 95.  At another point in the hearing, the appellant testified that she "asked for more flexible hours" as a reasonable accommodation but that she also "asked

for a flexi tour for a reasonable accommodation." *Id.* at 97. Under these circumstances, we cannot discern if the appellant clearly communicated and the agency understood that she was seeking to arrive at work at a later time than 9:30 a.m. prior to the accommodation being awarded.[6] Moreover, there is no evidence that, between the agency's decision on June 18, 2012, to grant her an accommodation of a flexible work schedule, and July 2, 2012, when she was placed on leave following the issuance of the notice of proposed removal, RFR File, Tab 9 at 17-23, she ever communicated to the Human Resources Specialist that the approved accommodation was not what she was seeking. To the contrary, the record reflects only that she raised this issue in her response to the notice of proposed removal. *See* RFR File, Tab 7 at 208. Given the confusing nature of her testimony and the lack of supporting documentation in the record, we cannot discern whether the appellant communicated and/or the agency understood that her request for a flexible schedule was a request to come to work after 9:30 a.m. Because we cannot conclude that the appellant clearly communicated the nature of the flexible work schedule that she was seeking, we also cannot conclude that the agency improperly denied her a reasonable accommodation. *See White*, 120 M.S.P.R. 405, ¶¶ 11-15 (finding that because the appellant failed to fulfill his obligations in the interactive accommodation process, he failed to establish that the agency violated its duty of reasonable accommodation).[7]

---

[6] The appellant asserted in her request for review that the agency's Human Resources Specialist did not know about flexitour. *See* RFR File, Tab 7 at 6-7. We are unable to make a determination on this assertion based on the current record.

[7] The appellant also appeared to argue that her due process rights were violated when the agency improperly considered her performance in its decision and the arbitrator erred because he made no reference to the role performance allegedly played in the agency's decision. *See* RFR File, Tab 7 at 7, 39-41. We find no evidence of a due process violation in this regard. The arbitrator referenced the appellant's performance issues in the background of his decision and the deciding official's consideration of the appellant's performance in his penalty analysis. *See* RFR File, Tab 8 at 24-26, 32-35, 77. It is not clear from the limited record provided to us by the appellant whether she

Because the arbitrator made an error in civil service law in his analysis of the penalty, we vacate his penalty determination.

¶16   The arbitrator found that the deciding official reasonably exercised his discretion and weighed the various factors under *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981), and he affirmed the removal.  *See* RFR File, Tab 8 at 75-78.  The appellant argued in her request for review, however, that the deciding official and the arbitrator improperly failed to consider her medical conditions as a mitigating factor.  *See* RFR File, Tab 7 at 8.  She also alleged that the arbitrator erred when he found that the failure to follow instructions charge corresponded to the charge of "disregard of a directive" (offense 19) in the agency's table of penalties instead of "failure to follow established leave procedures" (offense 1(b)).  *Id.* at 6-8; *see* RFR File, Tab 9 at 140, 142.  She further alleged that, in making the determination of the proper corresponding offense in the agency's table of penalties, the arbitrator improperly considered a post-hearing declaration from an agency official, which she states constitutes a due process violation.  *See* RFR File, Tab 7 at 8.

¶17   The deference that is due to an arbitrator's findings extends to findings related to penalty determinations.  *Cambridge v. Department of Justice*, 111 M.S.P.R. 152, ¶ 15 (2009).  In making these findings, arbitrators are required to apply the same rules that the Board applies.  *Id.*  When the arbitrator does not apply those rules, his penalty determination is not entitled to deference, and the Board will conduct its own analysis.  *Id*.

¶18   We agree with the appellant that the arbitrator's penalty analysis contains an error in civil service law because it does not appear that he considered all of the relevant *Douglas* factors.  In particular, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has held that "when mental impairment or illness

---

explicitly raised a due process violation before the arbitrator, but in any event, the notice of proposed removal discusses the effect of the appellant's absences on her ability to perform her duties, and she addressed her job level and performance in her response to the proposed removal.  *See* RFR File, Tab 9 at 21, 67.

is reasonably substantiated, and is shown to be related to the ground of removal, this must be taken into account when taking an adverse action against the employee." *Malloy v. U.S. Postal Service*, [578 F.3d 1351](#), 1356 (Fed. Cir. 2009). Neither the deciding official nor the arbitrator explicitly considered as a mitigating factor the appellant's numerous, documented medical conditions, which are clearly related to the two charges that led to her removal. We find that the arbitrator's failure to consider this evidence is contrary to the Federal Circuit's directive in *Malloy* and constitutes an error of civil service law. Thus, the arbitrator's penalty determination is not entitled to deference.

Removal is a reasonable penalty for the sustained misconduct.

¶19    The Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Douglas*, 5 M.S.P.R. at 306. As noted above, the agency, like the arbitrator, failed to consider the appellant's numerous medical conditions. Thus, we independently evaluate the penalty.

¶20    The Board and the Federal Circuit have found that the sustained offenses are serious. *See, e.g.*, *Tate v. U.S. Postal Service*, 495 F. App'x 72, 74-76 (Fed. Cir. 2012) (in affirming the agency's decision to remove the appellant based on a single charge of failure to maintain a regular work schedule, the court implicitly affirmed the agency's determination that the charge was serious); *Hernandez v. Department of Agriculture*, [83 M.S.P.R. 371](#), ¶¶ 2, 9 (1999) (failure to follow instructions is a serious charge).

¶21    We have considered the following aggravating factors: (1) the appellant's disciplinary history, which includes a September 16, 2011 Official Reprimand based on charges of absence without leave and failure to comply with a leave restriction memorandum, RFR File, Tab 9 at 48-50; (2) records of her prior performance; (3) the deciding official's statement that he no longer had confidence in the appellant's ability to perform her job and that she had no potential for rehabilitation, *id.* at 74; and (4) the fact that the appellant was on

notice, through various leave restriction memoranda and the Official Reprimand, that continued absences and failure to follow the agency's leave restrictions could lead to more discipline.

¶22      We also have considered mitigating factors, in particular, the appellant's 17 years of federal service and her numerous medical conditions, which clearly played a part in the sustained misconduct. *See Malloy*, 578 F.3d at 1356.

¶23      We further find that the charge of failure to follow instructions is more akin to the offense of "disregard of a directive" in the agency's table of penalties and offenses (offense 19), rather than the offense of "failure to follow established leave procedures" (offense 1B). The proposal notice states that the appellant was placed on a leave restriction because she did not comply with established leave procedures. *See* RFR File, Tab 9 at 21. The appellant's subsequent failure to follow the leave restriction memorandum cannot also be viewed as a failure to follow established leave procedures, particularly when the leave restriction memorandum was only directed to her.[8]  The agency's table of penalties and offenses states that, for a first offense of a disregard of a directive offense, the penalty ranges from a 5-day suspension to a removal for a first offense. *See id.* at 142.

¶24      We also have considered the duration of the appellant's absences. As discussed above, the arbitrator found that the appellant took 1800 hours of leave—excluding FMLA and OWCP leave—over a 2 ½ year period, *see supra* ¶ 9, which means that the appellant was absent for approximately one-third of the time during the relevant period.

¶25      Based on our review of these factors, we conclude that removal is a reasonable penalty for the sustained misconduct. *See, e.g.*, *Schultz v. Department of the Navy*, [810 F.2d 1133](#), 1137 n.* (Fed. Cir. 1987) (an agency can bring a removal action against an employee for prolonged absences, even if the absences

---

[8] In light of our disposition, we need not consider the post-hearing declaration admitted by the arbitrator.

are attributable to poor health); *Combs v. Social Security Administration*, [91 M.S.P.R. 148](#), ¶¶ 1, 11-21 (2002) (sustaining the appellant's removal based on charges of inability to maintain regular attendance and inability to perform assigned duties for medical reasons).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims: Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) ([5 U.S.C. § 7702](#)(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                    _____
                                 William D. Spencer
                                 Clerk of the Board

Washington, D.C.